Filed 7/29/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CRYSTAL ARTERBERRY et al., | B344295 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 23STCV31145) |
| v. | |
| PEET'S COFFEE, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Carolyn B. Kuhl, Judge. Affirmed.

Singleton Schreiber, Benjamin I. Siminou, Jonna D. Lothyan, Christopher R. Rodriguez and Andrew D. Bluth for Plaintiffs and Appellants.

Benesch, Friedlander, Coplan & Aronoff and Michael D. Meuti for Defendant and Respondent.

————————————

Civil Code section 1670.8,[1] known colloquially as the "Yelp law," protects the right of consumers to post negative reviews of businesses on platforms such as Yelp.com. The statute invalidates provisions in consumer contracts "waiving the consumer's right to make any statement regarding the seller or lessor or its employees or agents, or concerning the goods or services" (*id.*, subd. (a)(1)) and forbids sellers from "threaten[ing] or . . . seek[ing] to enforce a provision made unlawful under this section, or . . . otherwise penaliz[ing] a consumer for making any statement protected under this section" (*id.*, subd. (a)(2)). The statute also creates a private right of action by consumers to collect monetary penalties against "[a]ny person who violates this section." (*Id.*, subd. (c).)

This case presents a narrow question of statutory interpretation: May a consumer seek monetary penalties against a company for including a contractual provision made illegal under section 1670.8 as part of the terms and conditions on its website, even if the company never threatened to enforce that provision or take any action against the consumer? We hold section 1670.8 outlaws non-disparagement clauses in consumer contracts, but it unambiguously allows a consumer to bring a suit for monetary penalties only when a seller attempts to enforce such a provision or otherwise seeks to penalize a consumer.

## TRIAL COURT PROCEEDINGS

On December 20, 2023, Crystal Arterberry and three other plaintiffs filed a class action complaint against Peet's Coffee, Inc. (Peet's) alleging causes of action for violation of section 1670.8

---

[1] Unspecified statutory references are to the Civil Code.

and the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200). The plaintiffs alleged they were California citizens who had made purchases from Peet's website, and that the terms and conditions of the website required them to agree not to submit content to the website " 'intended to cause commercial harm' " to Peet's or to use Peet's trademarks " 'in any manner . . . that would disparage' Peet['s] products or brands." The plaintiffs did not allege that Peet's ever threatened to enforce those provisions against them, or even that the plaintiffs were aware of the relevant terms and conditions when they visited Peet's website. The plaintiffs sought relief on behalf of all California residents who either visited, used, or made purchases from Peet's website.

Peet's demurred, arguing the plaintiffs had failed to state a claim because their terms and conditions did not violate section 1670.8, and that in any case, the plaintiffs could not succeed on their claims without alleging that Peet's threatened or sought to enforce its terms and conditions against them. Peet's argued the UCL claim also failed because it was derivative of the section 1670.8 claim, and because the plaintiffs lacked standing as they had not claimed to have suffered any economic damages. The plaintiffs opposed the demurrer, taking issue with each of Peet's arguments.

Peet's attached a copy of its terms and conditions as an exhibit to the demurrer, and the plaintiffs do not challenge this document's accuracy. For the purposes of our statutory analysis, we assume without deciding the following sections of the terms and conditions on which plaintiffs rely violate section 1670.8, subdivision (a)(1)'s ban on the waiver of consumer rights to make statements about a seller or its goods. The first is a section on trademarks, which lists a series of Peet's trademarks and states,

3

in relevant part, "You may refer to Peet's trademarks in a manner that is not misleading and clearly acknowledges Peet's ownership of our marks. By using this website, you acknowledge our ownership of our marks and agree not to challenge our rights. You may not use any of Peet's marks or trade dress in any manner that would lead to confusion as to the source of any product or service, in any manner that would falsely suggest that Peet's is affiliated with, endorses, or sponsors any product or service, or in any manner that would disparage our marks and brand."

The document also includes a section governing the submission of user reviews and other content on Peet's website. The section lists content that users may not submit, including content that is "offensive, violent, promotes racism, bigotry, hatred, harassment or physical harm of any kind," pornographic content, libelous or slanderous content, computer viruses, and other standard categories of content moderation. This section also includes a provision that "[y]ou may not submit content to the [s]ite or use it in any manner that" "[i]s intended to cause commercial harm to us or to benefit a third party at our expense." This section applies only to Peet's website; it does not apply to any other platform on which a consumer might post content.

The trial court sustained the demurrer. The court concluded that section 1670.8 unambiguously allows actions for civil penalties only when a party has threatened or sought to enforce an illegal contract against a consumer. Merely proposing or attempting to impose such a contract does not create a cause of action. Because the statutory language was unambiguous, the court found it unnecessary to proceed further, but the court nevertheless found two additional factors supported its

4

conclusion.  First, to the extent statutory history was relevant, it supported the court's position.  Second, the lack of unmistakable language supporting a private right of action for seeking to impose an illegal contract counseled against recognizing such a right.  The court sustained the demurrer as to the UCL claim on the ground that the plaintiffs failed to allege they suffered economic damages as a result of Peet's actions.

Because the plaintiffs did not state they could allege facts supporting a claim that Peet's sought or threatened to enforce the terms and conditions against them, the court denied leave to amend the complaint as to their section 1670.8 claim.  The court granted leave to amend the complaint as to the UCL claim to allow the plaintiffs to allege they suffered economic harm, but the plaintiffs did not do so, and the court entered judgment in favor of Peet's.

Plaintiffs timely appealed.  They limit their appellate challenge to section 1670.8, and have abandoned any argument concerning their UCL claim or any claim that they suffered economic harm.

**STANDARD OF REVIEW**

" 'The purpose of a demurrer is to test the sufficiency of a complaint by raising questions of law.' " (*Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1143.)  "We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law." (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1190.)  In doing so, " '[w]e assume the truth of the properly pleaded factual allegations, [and] facts that reasonably can be inferred from those expressly pleaded.' [Citation.]  But we do not assume the truth of 'contentions, deductions, or conclusions of

law.' [Citation.] We liberally construe the complaint 'with a view to substantial justice between the parties,' drawing 'all reasonable inferences in favor of the asserted claims.' " (*Liapes v. Facebook, Inc.* (2023) 95 Cal.App.5th 910, 919.) "To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action . . . ." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872.)

"When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' [Citation.] Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action." (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1609.) "Where, however, amendment could not correct a deficiency in the complaint or where the action is barred as a matter of law, the demurrer is properly sustained without leave to amend." (*State of California Auto. Dismantlers Assn. v. Interinsurance Exchange* (1986) 180 Cal.App.3d 735, 742.)

## DISCUSSION

The Legislature enacted section 1670.8 to protect the right of consumers to review products on the internet without fear of retaliation. According to a report to the Assembly Committee on the Judiciary, the legislation was inspired by the experience of a couple in Utah who submitted a negative review of a retailer on an online review site. Four years later, the retailer demanded the couple pay a $3,500 fine, claiming the review "violat[ed] . . . a non-disparagement clause hid[den] deep within the company's 'terms of use' policy." When the couple refused, the retailer

6

reported them to a credit-reporting agency, damaging their credit. To prevent website operators from taking actions like these against California consumers, the Legislature provided that "[a]ny person who violates this section shall be subject to a civil penalty" of up to $2,500 for the first violation and $5,000 for each additional violation, "to be assessed and collected in a civil action brought by the consumer, by the Attorney General, or by the district attorney or city attorney of the county or city in which the violation occurred." (*Id.*, subd. (c).)

The question in this case, a matter of first impression,[2] is what it means to "violate[] this section." (§ 1670.8, subd. (c).) Because this case revolves around section 1670.8's interpretation, we begin by quoting the text of the statute in full:

"(a)(1) A contract or proposed contract for the sale or lease of consumer goods or services may not include a provision waiving the consumer's right to make any statement regarding the seller or lessor or its employees or agents, or concerning the goods or services.

---

[2] The parties have cited two published federal district court opinions addressing the issue. In *Anderson v. United Parcel Service of America, Inc.* (C.D.Cal. 2024) 734 F.Supp.3d 1012, the court held that a defendant may be liable for civil penalties even if it never sought to enforce a non-disparagement clause. (*Id.* at p. 1019.) In *Shofet v. Zillow Inc.* (C.D.Cal. 2024) 741 F.Supp.3d 866, the court disagreed with *Anderson* and held that there is no cause of action unless a defendant attempts or threatens to enforce an illegal provision. (*Id.* at pp. 875-877.) The court in *Shofet* subsequently granted the plaintiffs' motion for reconsideration and dismissed the case for lack of standing. Neither case binds us. (*Ram's Gate Winery, LLC v. Roche* (2015) 235 Cal.App.4th 1071, 1080.)

"(2) It shall be unlawful to threaten or to seek to enforce a provision made unlawful under this section, or to otherwise penalize a consumer for making any statement protected under this section.

"(b) Any waiver of the provisions of this section is contrary to public policy, and is void and unenforceable.

"(c) Any person who violates this section shall be subject to a civil penalty not to exceed two thousand five hundred dollars ($2,500) for the first violation, and five thousand dollars ($5,000) for the second and for each subsequent violation, to be assessed and collected in a civil action brought by the consumer, by the Attorney General, or by the district attorney or city attorney of the county or city in which the violation occurred.  When collected, the civil penalty shall be payable, as appropriate, to the consumer or to the general fund of whichever governmental entity brought the action to assess the civil penalty.

"(d) In addition, for a willful, intentional, or reckless violation of this section, a consumer or public prosecutor may recover a civil penalty not to exceed ten thousand dollars ($10,000).

"(e) The penalty provided by this section is not an exclusive remedy, and does not affect any other relief or remedy provided by law.  This section shall not be construed to prohibit or limit a person or business that hosts online consumer reviews or comments from removing a statement that is otherwise lawful to remove."  (§ 1670.8.)

The plaintiffs argue that a defendant may "violate[] this section" (§ 1670.8, subd. (c)), and thus trigger a consumer's right to bring a cause of action, not only by threatening or seeking to enforce a non-disparagement agreement or penalize a consumer

8

for speaking (*id.*, subd. (a)(2)), but also simply by attempting to create a consumer agreement prohibited by subdivision (a)(1). The trial court explained why this interpretation is inconsistent with the text of the statute, and we adopt its reasoning on this question:

"Sub[divisions] (a)(1) and (b) of the statute, read together, make clear that a contractual provision limiting a consumer's right to make a statement concerning a seller or the seller's goods or services cannot be enforced and is void. Sub[division] (a)(1) states that a contract for sale of consumer goods or services may not contain such a contractual provision. Sub[division] (b) states that such a provision is contrary to public policy and 'is void and unenforceable.' Therefore, if a seller offers to sell goods or services conditioned on the buyer's waiving her right to make a statement about those goods or services, and if the buyer accepts that offer, that provision in the resulting contract is unenforceable. (See, e.g., Rest.2d, Contracts, § 178 ['A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable']; see also *Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 988 [refusing to enforce contract provision that was contrary to statutory law].) However, sub[divisions] (a)(1) and (b), when read together, do not say that a seller violates the law by offering a contract with a term that limits a consumer's right to make a statement about the seller or the goods sold.

"Sub[division] (a)(2), by contrast, *does* define an unlawful act. Sub[division] (a)(2) provides that it is 'unlawful to threaten or to seek to enforce' a provision that is prohibited by sub[division] (a)(1) or to 'otherwise penalize' a consumer for

9

making a statement that is 'protected under this section.' Sub[division] (c) imposes a civil penalty on '[a]ny person who violates this section.' . . . "

"The only statutory language that can be read to refer to a 'violation' committed by a 'person' [as required by subdivision (c) of section 1670.8] is subdivision (a)(2), which makes it 'unlawful' to commit certain acts, i.e., to 'threaten or seek to enforce' or 'otherwise penalize' a consumer. Subdivision (a)(1) does not refer to any acts taken by a person; instead, it refers to 'a contract or proposed contract' and what may be included in such contract. Sub[division] (a)(1) does not make it unlawful to propose or to offer to agree to a limitation on consumer speech. Rather sub[division] (a)(1) makes a particular contract provision unlawful, without reference to how the contract was agreed to or procured. Thus, unlike sub[division] (a)(2), which defines an unlawful action taken by a person, there is no predicate act under sub[division] (a)(1) to which the penalty defined in sub[division] (c) can attach. This distinction between actions in subdivision (a)(2) and non-actions in subdivision (a)(1) must be given effect. Sub[division] (a)(1) does not define a violation to which the sub[division] (c) penalty can attach."

The plaintiffs object to the court's reasoning on the ground that "speech-restricting provisions made unlawful by subdivision (a)(1) [of section 1670.8] do not magically appear in consumer contracts; they must be inserted by *someone*." That is of course true. But nothing in section 1670.8, subdivision (a)(1) makes the act of *inserting* illegal language, or *proposing* or *attempting to enter* into an illegal contract, unlawful. Any such verbs are missing from this portion of the statute. This is not an academic point; without language defining what constitutes a violation, it

10

is impossible to say how or how often a business that includes a potentially illicit clause in the terms of use of its website would violate the statute.  Does the act of posting a non-disparagement clause constitute a single violation, or, as the plaintiffs allege, is it a separate violation with respect to every customer of the business who resides in California?  Does it matter whether a customer reads the document or clicks on a button indicating assent to the terms of use?  Or does a cause of action accrue when a consumer simply visits a website, so long as the website includes fine print stating that anyone using the site agrees to be bound to the terms of use?  Because section 1670.8, subdivision (a)(1) includes no language defining what conduct constitutes a violation, a court would need to answer all these questions out of nothing, essentially rewriting the statute in the process.

The Legislature knows how to penalize specific conduct, as it did in section 1670.8, subdivision (a)(2), where it included the relevant verbs:  "It shall be unlawful to *threaten* or to *seek to enforce* a provision made unlawful under this section, or to otherwise *penalize* a consumer for making any statement protected under this section." (*Ibid.*, italics added.)  An analogous provision of the Business and Professions Code illustrates this difference.  Section 16600 of the Business and Professions Code provides that "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." (*Id.*, subd. (a).)  This statute did not set forth a private right of action for damages or civil penalties, but in 2023 the Legislature created a new cause of action to protect employees from noncompete agreements:  "An employer that *enters into* a contract that is void under this chapter[, which

11

includes Business and Professions Code section 16600,] or *attempts to enforce* a contract that is void under this chapter commits a civil violation" (*id.*, § 16600.5, subd. (d), italics added, enacted by Stats. 2023, ch. 157, § 2), and "[a]n employee . . . may bring a private action to enforce this chapter" (*id.*, subd. (e)(1)). Business and Professions Code section 16600.5, subdivision (d) specifically makes the entry of a contract with the void term a civil violation. We infer the lack of equivalent language in section 1670.8 to reflect a deliberate choice by the Legislature.

The plaintiffs contend that it is possible to violate section 1670.8 merely by creating a contract with a non-disparagement clause because the statute describes such clauses as "unlawful." They note that under subdivision (a)(2), "[i]t shall be unlawful to threaten or to seek to enforce *a provision made unlawful* under this section." (*Ibid.*, italics added.) In the plaintiffs' view, this must refer to subdivision (a)(1), and thus, the statute makes any contract contrary to that subdivision unlawful. Even if this is correct, it does not imply that the creation of a contract contrary to subdivision (a)(1) constitutes a violation. The law frequently uses the term "unlawful" to refer to any contract that is null and void under public policy or statute. Thus, in *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, our Supreme Court noted that courts had held that "contracts that waive an employee's right to indemnification [for discharging the employee's duties are] *null and void*. [Citation.] Thus, indemnity rights are nonwaivable, and any contract that does purport to waive an employee's indemnity right would be contrary to the law and

12

therefore *unlawful* to that extent."[3] (*Id.* at pp. 951-952, italics added, fn. omitted.) The Civil Code reflects this use. Section 1670.8 is codified within the title of the Civil Code entitled "Unlawful Contracts." (Div. 3, pt. 2, tit. 4, §§ 1667-1670.15.) That title lists a series of prohibited contracts, which are described as "void" or "unlawful," such as contracts in restraint of marriage (§ 1669 ["void"]), contracts with unlicensed telemarketers (§ 1670.6 ["unlawful"]), and contracts purporting to allow deductions from a person's wages to cover the costs of emigrating and transporting the person to the United States (§ 1670.7 ["void"]). These statutes merely invalidate the types of contracts in question. Just as we saw previously in the case of Business and Professions Code sections 16600 and 16600.5, when the Legislature believes an additional remedy is necessary, it creates a provision saying so explicitly. Thus, section 1670.10 makes installment purchase contracts for cats and dogs "void as against public policy." (*Id.*, subds. (a)(1), (b).) A separate subdivision of the statute states that the possessor of a dog or a cat under an illegal contract "shall be deemed the owner of the dog or cat and shall also be entitled to the return of all amounts the consumer paid under the contract." (*Id.*, subd. (c).) Similarly,

---

[3] The court in *Edwards* did not hold that the creation of an unlawful contract triggered a private right of action. Instead, the plaintiff sued for intentional interference with prospective economic advantage, an element of which is that the defendant committed a wrongful or unlawful act. (*Edwards v Arthur Andersen LLP*, *supra*, 44 Cal.4th at pp. 943-944.) The court held that the employer's demand that its employee enter into an unlawful contract met this requirement. (*Id.* at pp. 944-945, 951-952.)

section 1669.7 provides that contracts for the payment of money in exchange for producing knowledge of a crime, in violation of Penal Code section 132.5, are "void as contrary to public policy." The statute goes on to state that "[t]he Attorney General or the district attorney of the county in which a violation of [s]ection 132.5 of the Penal Code occurs may bring a civil action, or intervene in any civil action, to enjoin the enforcement of a contract that violates that section." (§ 1669.7.) Under this statutory schema, merely creating or attempting to enter into an illegal contract, whether that type of contract is described as "void" or "unlawful," does not create an independent cause of action unless the Legislature provides one explicitly. As we have just explained, the Legislature did not do so for creating a contract made invalid by section 1670.8.

The plaintiffs contend the trial court's interpretation is incorrect because section 1670.8, subdivision (c) states that "[a]ny person who violates *this section* shall be subject to a civil penalty." (*Ibid.*, italics added.) In the plaintiffs' view, if the Legislature had intended to restrict private rights of action only to violations of subdivision (a)(2), it would have specified that subdivision. Instead, according to the plaintiffs, the use of the phrase "this section" indicates the Legislature contemplated that a suit could be predicated on other subdivisions. In support of their position, the plaintiffs cite *People v. Lara* (2010) 48 Cal.4th 216, where our Supreme Court interpreted analogous language in a section of the Penal Code defining the maximum term of civil commitment after the completion of a prison sentence. Under the relevant provision of the statute, "[t]he time limits of this section are not jurisdictional." (Pen. Code, § 1026.5, subd. (a)(2).) The defendant argued that the statute "really intended to say that the

14

time limits set out 'in *subdivision (a)* [of Penal Code section 1026.5]' are not jurisdictional" (*Lara*, *supra*, at p. 226), and thus that the court lacked jurisdiction to civilly commit him because it failed to meet a trial deadline specified in a different subdivision. The Supreme Court rejected this argument on the ground that it was contrary to the plain meaning of the statute. (*Ibid.*)

We agree with the plaintiffs that the phrase "this section" in section 1670.8, subdivision (c) defines how far the subdivision applies. Unlike Business and Professions code section 16600.5, which creates a private right of action against any employer that "attempts to enforce a contract that is void under *this chapter*," (*id.*, subd. (d), italics added), section 1670.8, subdivision (c) applies only to violations of section 1670.8 itself. It does not follow that every subdivision within section 1670.8 is capable of being "violate[d]" by a seller as set forth in subdivision (c). For example, some of section 1670.8's subdivisions establish maximum penalties, provide procedures for enforcement, and reaffirm that the statute's remedies are not exclusive and that website operators may continue to moderate online consumer reviews and comments. These subdivisions establish rules but do not define violations by a seller. The use of the phrase "[a]ny person who violates this section" (*id.*, subd. (c)) thus does not demonstrate that the Legislature intended every subdivision of section 1670.8 to be capable of violation and subject to monetary penalty.[4]

---

[4] This stands in contrast to section 1670.8.5, enacted several years after section 1670.8, in which the Legislature barred the inclusion of terms in contracts or proposed contracts for the provision of services by a licensee that limit the

15

As the trial court explained, a provision cannot define a violation unless it "refer[s] to . . . acts taken by a person." Only section 1670.8, subdivision (a)(2) does, and thus it is the only portion of the statute that can be violated as that term is used in subdivision (c). *Lara* does not hold otherwise. In that case, the Supreme Court held that Penal Code section 1026.5, subdivision (a)(2) makes all time limits within that statute non-jurisdictional, but the court did not imply that every subdivision in the statute contains a time limit.[5] (See *People v. Lara*, *supra*, 48 Cal.4th at p. 222 ["Various numbered paragraphs of subdivision (b) set out specific time limits within which actions 'shall' be taken"].)

The plaintiffs also argue that the legislative history of section 1670.8 supports their interpretation. They isolate certain

_____

consumer's ability to file a complaint with the seller's licensing board and to participate in a board investigation into the licensee. Section 1670.8.5 provides that such contracts or proposed contracts "shall not include" such a non-disparagement or non-participation provision (*id*., subd. (a)), makes any such waiver "void and unenforceable" (*id*., subd. (b)), and states that "[v]iolation of this section by a licensee shall constitute unprofessional conduct subject to discipline by the licensee's licensing board" (*id*., subd. (d)). Unlike section 1670.8, there is no other provision in section 1670.8.5 that is capable of violation other than subdivision (a), such that subdivision (d)'s reference to "[v]iolation of this section by a licensee" necessarily refers to subdivision (a).

[5] The provision at issue in *Lara* undisputedly did contain a time limit. It stated that a trial on extended commitment of a criminal defendant "shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless that time is waived by the person or unless good cause is shown." (Pen. Code, § 1026.5, subd. (b)(4).)

16

comments from various points in the drafting process prior to the statute taking its final form.  But such legislative history is relevant only " '[w]hen the language of a statute is ambiguous—that is, when the words of the statute are susceptible to more than one reasonable meaning, given their usual and ordinary meaning and considered in the context of the statute as a whole.' " (*Make UC a Good Neighbor v. Regents of University of California* (2024) 16 Cal.5th 43, 55.)  If, as is the case here, " 'there is no ambiguity, " ' " 'we presume the Legislature meant what it said and the plain meaning of the statute governs.' " ' " ' " (*Ibid.*)

That said, "the plain meaning rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose.  [Citation.]  Courts have therefore considered legislative history even in cases where the text of a statute is clear; but only to confirm the interpretation already apparent from the plain language . . . ." (*Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 755.)  Our review of the legislative history shows that the Legislature's primary purpose in enacting section 1670.8 was to protect California consumers against situations like that faced by the Utah couple against whom a seller sought to enforce a non-disparagement provision.  But under the plaintiffs' interpretation of the statute, efforts to enforce illegal non-disparagement provisions would account for only a tiny minority of potential fines.  Section 1670.8 applies to everyone, be it a Fortune 500 company or a small family business.  If, as the plaintiffs allege, the use of a non-disparagement clause created a cause of action with respect to each California resident who visited a website, with a civil penalty of up to $2,500 for each such resident, then a

17

relatively small business with 10,000 online California customers would face up to $25,000,000 in penalties for using insufficiently precise content moderation and trademark enforcement language in the terms and conditions of its website.  The same business would face no more than $5,000 in penalties for actually threatening or seeking to penalize a consumer for posting a negative review.[6]  In the more than 400 pages of legislative history that the plaintiffs submitted for our review, we see nothing to suggest the Legislature intended the statute to work this way.

---

[6] In this example, we assume that, as the plaintiffs argue, the maximum penalty for threatening or actually seeking to enforce the non-disparagement clause would be doubled from $2,500 to $5,000 because a business would have violated the statute twice—first by including an illegal non-disparagement clause, and again by seeking to enforce that clause.  (See § 1670.8, subd. (c).)

## DISPOSITION

The trial court's order sustaining the demurrer without leave to amend is affirmed.  The defendant is awarded its costs on appeal.

CERTIFIED FOR PUBLICATION


WEINGART, J.


We concur:



BENDIX, Acting P. J.



M. KIM, J.